E. S. KNEELAND *vs.* THE GREAT WESTERN ELEVATOR CO.

Opinion filed May 10th, 1898.

**Witnesses—Examination—Depositions.**

> Where a witness whose deposition has been taken answers a question by saying, "For answer to that question I refer to the answer of A. B.," it is error for the court to tell the jury that as a matter of law he has thereby made the answer of A. B. his own answer.

Appeal from District Court, Traill County; *Pollock*, J.

Action by E. S. Kneeland against the Great Western Elevator Company. Judgment for plaintiff, and defendant appeals.

Reversed.

*Cochrane & Feetham*, for appellant.

*Carmody & Leslie*, for respondent.

CORLISS, C. J. The complaint embraces two causes of action, —one to recover the value of a specified number of bushels of flax, and the other the difference between the value of 930 bushels No. 1 and 930 bushels No. 2 Northern wheat. Defendant received at its elevator in Blanchard, in this state, under a contract of storage, certain wheat and flax, and issued its warehouse receipts or tickets for the delivery to the depositor on demand of the same number of bushels of flax, and also of the same number of bushels of wheat of a like grade to that delivered. The plaintiff purchased such tickets, and on demand received from defendant a certain amount of wheat and flax; but it is claimed by plaintiff, although denied by defendant, that the flax delivered was short 89 bushels, and that the grade of wheat was No. 2 instead of No. 1 Northern. The flax and wheat were shipped to Duluth. In making out his case plaintiff took several depositions of persons in that city, who weighed and inspected the flax and wheat, and who examined the cars in which they were transported. It is claimed by plaintiff that the defendant did not allow him sufficient dockage for dirt in the flax delivered; but, even on plaintiff's own theory as to the true percentage of dockage for

dirt thus received, still, if the evidence of defendant's agent as to the number of pounds of flax gross weight delivered be true, a large proportion of this shortage of 89 bushels is to be accounted for in some other way. The jury must have believed that defendant's agent testified falsely, for the plaintiff was allowed the value for the full 89 bushels. It is obvious, however, that the jury might have found that the evidence of the agent was true, and also that the Duluth witnesses testified correctly, and yet have concluded that the flax had leaked out of the car in transportion. These preliminary observations bring us to what we regard as a fatal error in the case.

Plaintiff took the depositions of a Mr. Milne and a Mr. Gray. The former weighed the flax, and the latter inspected it in the car. Mr. Gray, in answer to several interrogatories, testified that the cars, as near as he could tell, had no leaks in them, and that the seals thereon had not been broken. When Mr. Milne was asked regarding the condition of the cars as to the possibility of leakage, and whether the seals on the cars had been broken he answered as follows: "I refer to the answer of Mr. Gray." On the trial counsel for the defendant objected to this answer; whereupon the court overruled the objection, directed that the testimony of Mr. Gray in answer to the same interrogatories he read, and instructed the jury that these answers of Mr. Gray should be considered the answers of Mr. Milne, as though the latter had incorporated in his answer the very same words used by Mr. Gray in answering the question. That this was error cannot admit of doubt. It cannot be said that a witness by such a general reference to the evidence of some other witness has thereby made the testimony of the latter his own. The most natural construction to place upon such an answer is that the witness disclaims any knowledge of the matter, and refers the counsel who is asking the question to a reliable source of information. Especially is this so when, as in this case, the witness was called upon to answer in some manner a series of interrogatories framed by counsel. A witness who has been giving definite

answers to inquiries clearly means, when he refuses to answer specifically a particular question and refers the counsel to another witness who knows the fact, that he cannot and will not testify on that point. But, in any view of the matter, it was for the jury to say what the witness meant by this answer, which did not purport to give his personal knowledge of the facts inquired about. The jury could have received no other impression than that they were bound, as a matter of law, to consider that Milne had testified to the same facts that Gray had testified to, though it is obvious that he intended nothing of the kind, and though it appears that he had no knowledge of such facts. It is urged that counsel for the defendant should, on it subsequently appearing that Milne knew nothing about these matters, have moved to strike out his answers. But these answers were not objectionable in themselves. They merely embodied a statement that the witness knew nothing about such facts, and referred the counsel to the witness Gray for information. The objectionable and prejudicial feature of the case was the statement of the court that by these words Milne had testified to what Gray had sworn to. This statement was just as erroneous when made as afterwards. No new developments in the case could make it more erroneous or more prejudicial. Though this record should show that Milne knew the facts, still it would have been error for the court to have told the jury that as a matter of law he had given the same answers as Gray. The case is not analogous to that in which evidence apparently competent when received is subsequently shown to be incompetent. In such a case, there being no original error, the party must, if he desires to get rid of the testimony, move to have it stricken out or ask the court to instruct the jury to disregard it. But here was an original error, whatever was the condition of the record at that time as to the knowledge of the witness Milne with respect to the facts to which Gray had testified, but to which he (Milne) distinctly refused to testify.

The error was prejudicial. It may have turned the scale in the mind of the jury as to the loss of the flax by leakage. Defend-

ant's agent having sworn that a certain number of pounds of flax had been put in the cars, and the weigher at Duluth having testified that there was a less number of pounds therein when the cars reached Duluth, even on defendant's own theory of dockage for dirt, the jury had before them some evidence warranting a finding that the flax was lost en route. Had not the court told them positively that they must add to the weight of the evidence of the witness Gray the weight of that of the witness Milne, though he did not testify on these points at all, they might have found that both defendant's agent and the weigher in Duluth had told the truth, and that the flax had leaked from the car on the way. Of course, under such a finding, the defendant would not be liable in this action, for the ground of liability here insisted on is the failure to deliver the flax called for by the tickets. The direct effect of this error of the court was to lessen the chances that the jury would give any credence to the testimony of defendant's agent; and, if the jury believed that he had deliberately sworn to a falsehood as to the flax, they would naturally conclude that he had likewise given false evidence as to the grade of the wheat. We therefore cannot, under the circumstances, separate the two causes of action, but must reverse the judgment in toto, and order a new trial. All concur.